# William B. McCleary, Appt., v. Robert J. Savage et Ux.

It seems that subrogation will not be decreed in favor of a volunteer who pays the debt of another, although he may have been induced to do this by fraud practised upon him by the debtor's agent.

The owner of real estate encumbered with a mortgage for $925 employed a conveyancer to secure a new mortgage for $600, and with the proceeds and a cash payment of $325 the latter was to satisfy the $925 mortgage. The conveyancer negotiated a forged mortgage upon this property for $1,400, with an innocent bona fide mortgagee. Subsequently the conveyancer had the owner execute a mortgage for $600; and on receiving $325 in cash, he satisfied the $925 mortgage. The $600 mortgage was never recorded nor has any claim been made upon it for interest or principal. The conveyancer paid the interest upon the $1,400 mortgage for two years and then disappeared. The holder of this mortgage having then discovered the fraud practised upon him presented a bill praying the cancelation of the satisfaction of the $925 mortgage and an assignment thereof to him. The answer prayed for the cancelation of the $1,400 mortgage. *Held:* (1) That the above facts gave the innocent holder of the $1,400 mortgage no equity to be subrogated to the rights of the mortgagee under the $925 mortgage; and (2) that the $1,400 mortgage should be canceled.

(Argued January 4, 1888.   Decided January 23, 1888.)

January Term, 1886, No. 176, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas No. 1 of Philadelphia County, dismissing a bill filed by William McCleary against Robert J. Savage *et ux.,* praying for the cancelation of the satisfaction of a certain mortgage and for subrogation to the rights thereunder. Affirmed.

The facts are sufficiently stated in the opinion of the court below.

The bill contained the following prayers:

I.   That the said Robert J. Savage and his wife might be decreed to deliver to the complainant the said indenture of mortgage dated March 13, 1876;

II.   That the defendant, John O'Donnel, recorder of deeds of Philadelphia county, might be decreed to cancel the satisfac-

---

NOTE.—As to right of subrogation in favor of volunteer who pays debts of another, see the presentation of the authorities in editorial note to Crumlish v. Central Improv. Co. 23 L. R. A. 124.

tion of record of said mortgage debt of $925, and the indorsement on the indenture of mortgage itself, and that the said mortgage might be reinstated of record;

III. That the said Mary Roberts might be decreed to assign to the complainant the said mortgage;

IV. General relief.

Respondents, in their answer, alleged that the mortgage of April 18, 1881, was fraudulently obtained and was a cloud upon their title, and prayed that the same be canceled.

The case was referred to a master, who recommended a decree in accordance with the prayer of the bill.

Exceptions to this report were sustained by the court, BIDDLE, J., filing the following opinion:

The master finds in this case that in the spring of 1881, Mr. and Mrs. Savage paid into the hands of George R. Magee the sum of $325 in cash, and instructed him to pay the same on account of the principal of a mortgage of $925 on Mrs. Savage's house, and procure for them a new mortgage of $600, the balance of the said debt at a lower rate of interest; and for that purpose he had in his hands the title papers of said premises.

Magee, instead of obeying these instructions, forged a mortgage of $1,400 upon the property, sold it to William B. McCleary, and satisfied out of the money the $925 mortgage.

The result of this is that Mr. and Mrs. Savage have lost their $325, paid to Magee in cash; and their property is liable to the $600 mortgage which they executed. McCleary has lost the whole amount of his mortgage.

Upon this state of facts, McCleary asks that the cancelation of the satisfaction of the mortgage of $925 should be erased, and that an order shall be made out to him. If this is done, the property of Mrs. Savage would have upon it two mortgages, one of $925, and one of $600, in addition to the loss of $325 in cash, and Mr. McCleary would get back the mortgage which his money has satisfied.

The master thinks that the prayers of McCleary should be granted, and the burden of both mortgages should be put upon Mrs. Savage. He thinks that because she intrusted her title papers to the agent who committed the fraud, and thus laid the foundation stone upon which the whole superstructure of rascality was built by him, the plaintiff is entitled to the relief which he seeks. We confess that to us the delivery of her title papers by

Mrs. Savage to an apparently respectable conveyancer, for the purpose of obtaining another mortgage reduced in rate and amount, appears to be quite a natural and proper proceeding. It was absolutely necessary that her papers should be delivered to the conveyancer, for without them he could not effect the object desired. To consider her responsible for the perpetration of the fraud on account of innocent proceeding of this kind, we find ourselves entirely unable to admit. How else, the master himself asked, could the $600 mortgage have been prepared and accepted by a bona fide mortgagee, if no access had been had to the papers?

In regard to Mr. McCleary, the master finds that his attention was particularly called by his counsel to the danger of accepting a mortgage which he had not seen executed; and he was advised to visit the parties to see if Magee was their agent authorized to act for them and receive the money, and a power of attorney was prepared for them to sign. Instead, however, of making any investigation of the subject from any disinterested parties, McCleary suggests to Magee himself the difficulty, who at once takes him to two people miles away from the real residence of Mrs. Savage, and there introduces him to two people who he said were Mr. and Mrs. Savage, the real Mr. and Mrs. Savage being people of color. These people signed the power of attorney. Thus Mr. McCleary put himself absolutely and entirely in the hands of Magee, and made no inquiries whatever as to his authority, except under his guidance. An inquiry on the premises would doubtless at least have informed him that the owners were colored people, although they were not the then occupants of the house.

If then the doctrine referred to by the master: "that where one of two innocent persons must suffer through the fraudulent act of a third, that one whose negligence has placed the means of wrong doing in the hands of the fraudulent agent must stand the loss," applies in this case, in our opinion the negligence, if any, was on the part of the plaintiff.

It was not negligence on the part of the defendant to intrust her title papers to an apparently respectable conveyancer to obtain a mortgage upon the property; and it was negligence not to have made inquiry of an agent's pretended authority, except in the mode devised by the agent himself.

Not concurring with the learned master in his views upon

this point, we do not think it necessary to discuss the reasoning founded upon it.

The plaintiff, in our opinion, was a simple volunteer, in regard to whom no right of subrogation can be claimed. As the master well says, and the authorities fully support him: "Widened as this principle has been, there has been attached to the modern application of it an inflexible exception, to wit: that it does not apply in case of mere volunteers."

The exceptions to the report of the master, so far as they affect the finding, relative to the prayers of the complainant, are sustained, and the relief prayed for by the respondent is granted.

The costs to be divided between the parties.

A decree was accordingly entered in accordance with these views.

McCleary appealed, specifying for error the decree of the court.

*Harold Mann,* for appellant.—The doctrine (of subrogation) as applicable to all cases where a payment has been made under a legitimate and fair effort to protect the ascertained interests of the party paying, and when intervening rights are not legally jeopardized or defeated. Mosier's Appeal, 56 Pa. 81, 93 Am. Dec. 783.

Much stress was laid by the counsel for the defendants, Savage and wife, upon the fact that as the payment of the $925 mortgage by McCleary was intended to be in entire extinguishment of the indebtedness a court of equity would not revive it. This has been held otherwise. Baily v. Brownfield, 20 Pa. 41; Mosier's Appeal, 56 Pa. 81, 93 Am. Dec. 783.

It was further contended that there was no obligation on the part of the plaintiff to pay the debt; but it is submitted, even if this be so, that if he supposed he was under an obligation, then relief can be granted him. Aldrich v. Cooper, 2 White & T. Lead. Cas. in Eq. 4th Am. ed. p. 287, note.

Where a bona fide purchaser, at an administrator's sale for the payment of debts, took the title which the administrator gave him, and subsequently paid off a mortgage upon the property under the belief that he held a valid title, the sale to him was set aside upon the application of an heir, owing to defect in form. The court held that the purchaser was entitled to be subrogated

to the lien of the mortgage so paid by him. Valle v. Fleming, 29 Mo. 152, 77 Am. Dec. 557.

Money paid under a mistake of fact can be recovered back. Meredith v. Haines, 14 W. N. C. 364. See also Kelly v. Solari, 9 Mees. & W. 54; Lawrence v. American Nat. Bank, 54 N. Y. 432.

*J. R. Sprague,* for appellees.—Subrogation will not be decreed in favor of a mere volunteer who pays the debt of another without any duty, moral or otherwise, so to do. Hoover v. Epler, 52 Pa. 522; Aldrich v. Cooper, 2 White & T. Lead. Cas. in Eq. 287, note; Dixon, Subrogation, pp. 163, 164.

The cases cited by appellant: Mosier's Appeal, 56 Pa. 81, 93 Am. Dec. 783; Meredith v. Haines, 14 W. N. C. 364; Kelly v. Solari, 9 Mees. & W. 54, and Valle v. Fleming, 29 Mo. 152, 77 Am. Dec. 557, do not apply to the case in hand, and are not good precedents for the relief asked for by appellant.

If a man voluntarily pays the debt of another without any agreement to that effect with the debtor, he cannot take the place of the creditor or recover the money so paid of the debtor, because the law does not permit one man thus officiously, and without solicitation, to intermeddle with the affairs of another. Sheldon, Subrogation, p. 280. See also Sandford v. McLean, 3 Paige, 122, 23 Am. Dec. 773.

He who seeks to charge another, through an agent, is bound to prove the agency in the person with whom he deals, and also the scope of that agency. Moore v. Patterson, 28 Pa. 505; Union Ref. & Storage Co. v. Bushnell, 88 Pa. 89.

PER CURIAM:

A careful consideration of the facts and circumstances of this case obliges us to adopt the conclusion of the court below. That the McCleary mortgage was a forgery is an admitted fact; and that $925 of its proceeds were applied to the Wertz mortgage, without the knowledge or consent of the appellees, does not alter the position of McCleary as a volunteer. That payment relieved the appellees of no part of the burden imposed upon them and their property. They had paid the forger $325, to apply on the Wertz mortgage, and had also executed a mortgage to him, or to some one indicated by him, for the balance. This obligation is still outstanding; so that if, through the machinations of Magee,

the money obtained by him from McCleary has been substituted for that of their own, which he ought to have honestly applied in satisfaction of their indebtedness, they were not to blame; they got only that which was their own, and it would be inequitable to compel them to refund to McCleary. Even were this not the case, it is doubtful whether equity would move to relieve one who, in legal parlance, occupies but the position of a volunteer.

The decree is affirmed and the appeal dismissed, at the costs of appellant.